UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN M. BURNS,

    Plaintiff,

v.

    Case No. 1:11-cv-578
    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 3, 1970 (AR 134).[1] Plaintiff attended college but did not graduate (AR 27-28, 132). He had previous employment as a salesperson for food wholesaler, sales person for manufactured homes, car salesman, warehouse worker, hospital orderly, laborer, and bar manager at a restaurant (AR 44-52, 128). Plaintiff alleged a disability onset date of August 1, 2007 (AR 134). He identified his disabling condition as diabetes with numbness in the fingers and toes, and blind in the right eye (AR 127). Plaintiff stated that he has been diabetic since age ten and that and he can no longer work due to the degenerative nature of the illness (AR 127). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 1, 2010 (AR 11-

---

[1] Citations to the administrative record will be referenced as (AR "page #").

18). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

3

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 1, 2007 and that he met the insured status requirements under the Act through September 30, 2010 (AR 13). Second, the ALJ found that plaintiff had severe impairments of diabetes mellitus, vision loss in the right eye and obesity (AR 13). The ALJ further found that plaintiff's medically determinable impairments of dysthymic and anxiety disorders were non-severe because they did not cause more than minimal limitation in his ability to perform basic mental work activities (AR 14).

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). In this regard, the ALJ reviewed Listings 2.02 (loss of visual acuity) and 9.08 (diabetes mellitus) (AR 13).[2] The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform work limited to lifting up to 10 pounds occasionally, sitting for up to 6 hours and stand/walk up to 2 hours in an 8 hour work day with normal breaks; occasionally climb, balance, stoop, kneel, crouch or crawl, grossly manipulate and finger with either extremity; avoiding concentrated exposure to extremes of cold or heat, and unprotected heights; and only when objects are presented from the left side in the course of work activities.

(AR 15). The ALJ also found that plaintiff could not perform any of his past relevant work (AR 17).

---

[2] Listing 9.08 has been replaced by Listing 9.00 (endocrine disorders).

4

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled sedentary work in the regional economy (defined as the State of Michigan) "such as 8,500 unskilled clerical jobs, such as [sic] administrative assistant, information clerk, reception, and other general clerical support positions" (AR 18). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2007 (the alleged onset date) through April 1, 2010 (the date of the decision) (AR 18).

### III. ANALYSIS

Plaintiff has raised one issue on appeal (with sub-issues).

**Did the Commissioner err as a matter of law by failing to properly apply the treating physician rule when it failed to afford controlling weight to plaintiff's treating physician opinions, when it failed to assign weight to the opinions, when it failed to weigh the factors set forth in 20 C.F.R. § 404.1527, and when it failed to provide good reasons for rejecting the opinions of plaintiff's treating physician?**

#### A. Plaintiff's physical limitations

Plaintiff contends that the ALJ failed to give controlling weight to the opinions of Mark O'Brien, M.D., as expressed in a physical RFC assessment dated January 19, 2010 (AR 285-86). Dr. O'Brien and his nurse practitioner signed a "Physical Capacities Assessment" dated January 19, 2010 (AR 285-86). In this assessment, the doctor stated that plaintiff's limitations consisted of right eye blindness, uncontrolled diabetes, peripheral neuropathy and panic disorder (AR 285). The doctor indicated that plaintiff could sit continuously for up to eight hours with break (AR 285). The doctor also indicated that plaintiff could perform a number of tasks "sometimes" (defined in the form as "continuously up to 2 hrs. or occasionally up to 6 hrs."): stand; walk; lift up

5

to 10 pounds; bend, squat, crawl or kneel; reach over his shoulder; pull; and climb stairs (AR 285). However, plaintiff could never lift more than 10 pounds, grasp or climb (AR 285).

The doctor further indicated in response to a series of questions (requiring a yes or no answer) that if plaintiff were required to work 40 hours per week (8 hours per day) in a competitive work environment: he would have severe limitations as to pace and concentration; he would need a sit/stand option as symptoms dictate; he would likely miss or be tardy three or more days of work per month; he was best suited for part-time work as opposed to full-time work, which would not accommodate his limitations; he would need breaks from work "as symptoms dictate"; he has right eye blindness; he could avoid workplace hazards except those on the right side due to his lack of right peripheral vision; he experiences side effects from Xanax including dizziness, drowsiness and trouble concentrating; he has significant manipulative limitations in his ability to handle and work with small objects; he has limited use of his hands for repetitive hand-finger actions (AR 285-86). The doctor also indicated that the "combined effect of these impairments on [plaintiff's] activities is greater than the effect of each impairment considered separately" (AR 286).

The ALJ addressed Dr. O'Brien's opinions as follows:

> As for the opinion evidence, the most comprehensive statement by a treating doctor is that of Mark O'Brien, the primary care doctor, in January 2010. As already noted, it may be that the nurse practitioner filled out the form, but Dr. O'Brien did sign it. Many of the limitations in the form (Exhibit 10F) are reflected in the residual functional capacity above, as they are consistent with the longitudinal perspective of the entire medical record. However, limitations as to sitting and standing at claimant's option, able to miss more than 3 days each month, needing breaks whenever necessary, and only part time work, cannot be justified on the objective findings or by consistent complaints or other evidence. It appears the doctor's office took claimant at his word in filling out this form. Thus, the residual functional capacity incorporates the credible and well supported portions of Dr. O'Brien's opinion, but no more.

> The State's medical evaluator (Exhibit 6F) offered a more generous assessment of claimant's functional limitations. This was done in 2007 and should be modified to a more restrictive set of limitations in light of the ongoing problems with both obesity and diabetes. Thus it is only of limited value.

(AR 16-17).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2).

An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at

773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

First, plaintiff contends that the ALJ "played doctor" because the RFC assessment was not based on any opinion of record. Plaintiff's cites no authority to support this contention. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this argument waived.

Second, plaintiff contends that the ALJ erred by failing to state the weight given to Dr. O'Brien's opinion. Plaintiff relies on *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011), which held that an ALJ's failure to assign weight to a treating physician's RFC assessment constituted error where the ALJ rejected conclusions contained in the assessment. *Cole*, 661 F.3d at 938. The court observed that an ALJ's finding "that a treating source medical opinion . . . is not entitled to controlling weight does not mean that the opinion should be rejected" (brackets omitted). *Id.* Rather, if the ALJ declines to give a treating source's opinion controlling weight, then he must balance the following factors to determine the appropriate weight: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source. *Id.* at 937 (referencing factors found in 20 C.F.R. §§ 404.1527(c)(1)-(5); 416.927(c)(1)-(5)).

Here, the ALJ did not specifically assign a weight to Dr. O'Brien's opinion. It appears that the ALJ gave controlling weight to parts of Dr. O'Brien's opinions, because some of the doctor's restrictions appear in the RFC (e.g., the 10 pound weight lifting limitation, standing and walking up to 2 hours in an 8 hour workday, only occasional climbing, kneeling and crawling, and presenting objects only from the left side (AR 15)). However, the ALJ rejected other parts of the doctor's opinion as not supported by objective medical evidence (e.g., sitting and standing at plaintiff's option, plaintiff's need to miss more than 3 days per month, plaintiff's need to take breaks as his symptoms dictate, and plaintiff's restriction to part-time work (AR 16-17)). The ALJ rejected the latter restrictions because the ALJ felt that Dr. O'Brien "took claimant at his word in filling out this form" (AR 17). The ALJ also found that the medical records did not support Dr. O'Brien's conclusion that plaintiff's diabetes was uncontrolled or that he suffered from peripheral neuropathy (AR 16).

Based on this record, the court cannot determine the weight which the ALJ assigned to Dr. O'Brien's opinion. It appears that the ALJ gave controlling weight to parts of the doctor's opinion and rejected parts of the opinion. With respect to the rejected parts of the opinion, the ALJ did not clearly articulate how he balanced the factors under §§ 404.1527(c) and 416.927(c). *See Cole*, 661 F.3d at 938. While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v.*

*Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (internal quotation marks omitted). Accordingly, this matter will be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to assign the weight given to Dr. O'Brien's January 19, 2010 opinions.

### B. Plaintiff's mental limitations

Plaintiff contends that the ALJ failed to mention the opinions of Richard L. King, Ed. D. and the weight assigned to Dr. King's diagnoses and analysis set forth in the September 2008 evaluation. Plaintiff also contends that the ALJ failed to mention the weight given to Dr. King's diagnoses and analysis. As an initial matter, the ALJ addressed Dr. King's evaluation when he determined that plaintiff's dysthymic and anxiety disorders were non-severe impairments and when determining plaintiff's RFC (AR 14, 16).[3] Dr. King is not a treating psychologist because he evaluated plaintiff on only one occasion (AR 278-84). *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (the rationale of the treating physician doctrine does not apply to a psychologist who examined the claimant on only one occasion). For that reason, Dr. King's report is " entitled to no special deference." *Id. See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010) (non-treating physicians are not granted the presumption of controlling weight afforded to treating physicians). Furthermore, because Dr. King was a nontreating source, the ALJ was not required to articulate any reasons for the weight he accorded the doctor's opinions. While

---

[3] While the ALJ did not mention Dr. King by name, he referred to the doctor's evaluation by date (September 2008) and exhibit number (Exhibit 9F) (AR 14).

the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Accordingly, the ALJ did not err with respect to his evaluation of Dr. King's opinions.

### C. Additional issues not raised in the statement of errors

Plaintiff presents arguments on two issues which were not identified in his statement of errors as required by the court's order directing the filing of briefs.[4] Plaintiff's failure to identify alleged errors could result in the waiver of those errors. However, because the parties have fully briefed these additional claims of error, the court will address them.

### 1. The RFC failed to include non-exertional (mental) limitations

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. *Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992), quoting 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Here, the ALJ addressed plaintiff's mental impairments of dysthymic and anxiety disorders, concluding that these disorders were non-severe impairments which caused only minimal limitations in plaintiff's ability to perform basic mental work activities (AR 14-15). The ALJ noted that Dr. King's evaluation did not include any specific functional limitations (AR 14). However, Dr. King

---

[4] The Court's notice directing the filing of briefs required plaintiff's initial brief to "contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." *See* Notice Directing Filing of Briefs (docket no. 12).

11

felt that plaintiff had some functional limitations. The doctor stated that plaintiff was interested in being a delivery driver or a security guard, and determined that "[t]hese occupations would appear to be within his functioning range without any special training" and that "he presents with achievement and intellectual functioning abilities sufficient enough to be successful in these occupations" (AR 282). In addition, the ALJ noted that plaintiff's disorders resulted in some mild limitations: plaintiff complained of some panic attacks which were helped by medication; plaintiff's medication for diabetes and anxiety affected his mental function (although not to the point where his intellectual abilities are affected); and plaintiff testified that he suffered from fatigue "which would diminish his ability to pay attention") (AR 14).

While these disorders caused only mild limitations, the ALJ should have taken these limitations into account in determining plaintiff's RFC.

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184 at * (July 2, 1996).[5] In summary, the ALJ failed to properly evaluate plaintiff's RFC. On remand, the Commissioner should incorporate plaintiff's non-severe mental limitations into the RFC determination.

### 2. The ALJ failed to properly review testimony of lay witnesses

Plaintiff also contends that the ALJ failed to properly consider the testimony of three lay witnesses, Sean Burns, Bob Ragina and Kelly Burns. Under the regulations, the ALJ may also consider "other non-medical sources" (such as spouses, parents, siblings, friends, neighbors and clergy) "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. §§ 404.1513(d) and 416. 913(d). However, the weight accorded such testimony is limited. "The testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed.Appx. 727, 733 (6th Cir. 2004), citing *Lashley v. Secretary of Social Security*, 708 F.2d 1048, 1054 (6th Cir.1983).

Here, the ALJ summarized the testimony of plaintiff's lay witnesses as follows:

> Members of [plaintiff's] family offered additional concerns that he is unsafe when left alone, as his diabetes can cause erratic behavior (Exhibit 10E). It was not until later that the complaint of anxiety or depression arose (AR Exhibits 9F; 10F/1).

(AR 16). Upon reviewing the lay witness statements, the court concludes that the ALJ did not provide any meaningful discussion of these witnesses, who discussed plaintiff's medical condition (AR 187-202). Some of the incidents described by the witnesses, such as plaintiff's involvement

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

in a fatal automobile accident, reflect incidents which the court would consider as far more serious than "erratic behavior" (AR 191-95). However, it is not for this court to review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard*, 889 F.2d at 681. Thus, on remand, the Commissioner should also re-evaluate the sworn statements of these three lay witnesses.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. On remand, the Commissioner is directed assign the weight given to Dr. O'Brien's January 19, 2010 opinions, incorporate plaintiff's non-severe mental limitations into the RFC determination and re-evaluate the sworn statements of the three lay witnesses. A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 24, 2012                          /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge